# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WILLIE MASON,<br><br>    Plaintiff<br><br>v.<br><br>WOODS, et. al.,<br><br>    Defendants | Case No.: 3:18-cv-00151-RCJ-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 20 |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 20, 20-1 to 20-6, 22-1, 22-2.) Plaintiff filed a response. (ECF No. 25.) Defendants filed a reply. (ECF No. 26.)

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP). (*Id.*) Defendants are Brian Woods, Brandon Gonzales, Charles Kirchen, George Davis, and Ronald Bryant.

The court screened Plaintiff's amended complaint, and allowed him to proceed with an Eighth Amendment claim based on allegations that Defendants were deliberately indifferent to

his safety regarding unsafe conditions in the prison kitchen where Plaintiff was working when they knew of a risk of harm in connection with a defective kettle, but disregarded that risk when they required him to use the kettle anyway. Ultimately, the kettle tipped and boiling water spilled on Plaintiff, resulting in second and third degree burns on his shin and foot. (ECF No. 6.)

Defendants move for summary judgment. Gonzales, Davis, Kirchen, and Bryant deny that they knew that the kettle was defective or that they directed Plaintiff to use the steam kettle. All of the Defendants argue that they did not infer a substantial risk of serious harm; and, they are entitled to qualified immunity.

## **II. LEGAL STANDARD**

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477

U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine

dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Standard**

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (19914). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)); *see also Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995) (prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety").

Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). The deliberate indifference standard involves an objective and subjective component. First, the alleged

deprivation must be, in objective terms, "sufficiently serious." *Farmer*, 511 U.S. at 834 (citation omitted). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." *Id*. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 835.

**B. Summary of Evidence and Argument**

According to Defendants, neither Bryant, Gonzales, Kirchen nor Davis were aware of any mechanical issues with the steam kettle prior to the incident, and none of them instructed Plaintiff to use the steam kettle prior to the incident. (Gonzales Decl., ECF No. 20-1; Davis Decl., ECF No. 20-2; Kirchen Decl., ECF No. 20-3; Bryant Decl., ECF No. 20-4.) The steam kettle, used for cooking eggs in the temporary culinary trailer at ESP suddenly tipped, sending hot water onto Plaintiff's foot. (Woods Decl., Ex 7.) Plaintiff burned his foot with hot water. (ECF No. 22-1.) He received medical care after his injury. (ECF No. 22-2.)

As will be discussed below, Plaintiff concedes that summary judgment should be granted in favor of defendants Kirchen, Bryant and Davis; therefore, the court will focus on the arguments asserted by Gonzales and Woods.

Gonzales states he did not direct Plaintiff to use the steam kettle, or cook eggs in a particular manner, and had no prior knowledge there may have been a maintenance issue with the steam kettle. (ECF No. 20-1.)

1       Defendant Woods was assigned to the culinary on the date of the incident. He states that
2 he did direct Plaintiff to use the tilt skillet[1] to cook eggs. He does not recall any reports from
3 staff or inmates that there was a maintenance issue with the skillet; however, he acknowledges
4 that Plaintiff did point out a note regarding the skillet, but it appeared that it was usable, in a safe
5 manner. Woods advised Plaintiff not to tilt the skillet, but to scoop the eggs out of the skillet
6 when done. Woods states that it appears the tilting mechanism failed, causing the skillet to tilt
7 unexpectedly. He indicates that he had no prior notice that the mechanism would fail in this
8 manner. (Woods Decl., ECF No. 20-6.)

9       Gonzales argues that he is entitled to summary judgment because he did not personally
10 participate in the alleged constitutional violation as he had no knowledge of the alleged safety
11 risk and was not involved in the decision to have Plaintiff use the kettle.  Defendant Wood and
12 Gonzales further argue there is no evidence they were aware the pot posed a substantial risk of
13 serious harm. Even assuming they could have inferred that the pot posed a substantial risk of
14 serious harm, they argue that there is no evidence they actually drew that inference.

15      Plaintiff concedes that Bryant, Davis, and Kirchen are entitled to summary judgment.
16 (ECF No. 25 at 3:23-24.) He argues, however, that Woods and Gonzales are not entitled to
17 summary judgment or qualified immunity. (*Id*. at 3:24-27, 4:1-2.) Therefore, summary judgment
18 should be granted in favor of Bryant, Davis and Kirchen. The court will now address Plaintiff's
19 argument as to Woods and Gonzales.

20      According to Plaintiff, on September 17, 2016, he was assigned as a cook in ESP's
21 culinary facility, and was told by his supervisor, Woods, that he would be cooking eggs in the

---

[1] All of the parties, with the exception of Woods in his declaration, refer to the kitchen equipment at issue as a kettle, or a steam kettle. Woods refers to it as a skillet or tilt skillet. Other than in summarizing Woods' declaration, the court will refer to it as a kettle.

6

trailer in front of units 1-4. Upon looking at the kettle, Plaintiff saw a warning note placed on the kettle that said: "DO NOT USE!" Plaintiff told Gonzales about it, and Gonzales walked over and saw the note. Plaintiff also went to inform Woods about the note. Plaintiff states that Gonzales was present and within earshot when he told Woods about the note on the kettle, and asked Gonzales and Woods what to do. Gonzales and Woods did not inspect the kettle for safety once they knew about the note. Instead, Woods instructed Plaintiff to use the kettle, and Gonzales allowed Plaintiff to use it anyway. Plaintiff was injured when the kettle tipped over, spilling gallons of hot boiling water on his feet, causing second and third degree burns, nerve damage, pain and suffering. (Pl. Decl., ECF No. 25 at 15-17.)

Plaintiff submits what he represents are Gonzales' responses to interrogatories, where Gonzales admits that prior to Plaintiff being injured, he approached Gonzales about the note on the kettle that said "do not use." (ECF No. 25 at 20.)

He also submits what he represents are Woods' responses to interrogatories, where Woods acknowledges that Plaintiff told him there was an issue with the kettle. (ECF No. 25 at 22.)

Plaintiff presents his grievance on the issue, where he recounted that on that day, Brian (Woods) saw that there was a tag on the kettle saying "spindle broken do not use." (ECF No. 25 at 26-27.)

**C. Analysis**

Gonzales states he did not direct Plaintiff to use the steam kettle, and does not recall reports from staff or inmates regarding a maintenance issue with the kettle. Plaintiff, on the other hand, presents evidence that he saw the note on the kettle and told Gonzales about it, and Gonzales went over and looked at the note himself. Plaintiff further claims that Gonzales heard

Plaintiff tell Woods about the note, and Gonzales heard Woods tell Plaintiff to cook with the kettle, and Gonzales allowed Plaintiff to do so. Plaintiff also presents what he represents are Gonzales' interrogatory responses, which Gonzales did not dispute or even address, where Gonzales admits that Plaintiff approached him about the "do not use" note on the kettle. Thus, Plaintiff presents evidence that Gonzales knew that Plaintiff would be boiling eggs in a kettle with a note on it that said "do not use."

Woods admits that he directed Plaintiff to use the skillet to cook eggs, and that Plaintiff pointed out the note on the skillet to him; he contends, however, that it appears it was usable in a safe manner. He says that the tilting mechanism subsequently failed, but he did not have knowledge that this would occur; however, he admits that he advised Plaintiff not to tilt the kettle which suggests that he may have suspected an issue with the tilting mechanism. In addition, Plaintiff's grievance on the issue recounted that the note said "spindle broken, do not use." Woods knew that Plaintiff would be using kettle to boil eggs in, and instructed Plaintiff to use the kettle anyway.

Defendants argue that they did not know of a substantial risk of harm, but there is evidence that: they knew there was a note that said "do not use" on the kettle; Woods told Plaintiff not to tilt the kettle, which Gonzales overheard; and, they knew Plaintiff would be using the kettle to cook eggs in boiling hot water.

In sum, Plaintiff has raised a genuine dispute of material fact as to whether Woods and Gonzales knew of and disregarded a substantial risk of harm to Plaintiff.

**D. Qualified Immunity**

Woods and Gonzales argue that they are entitled to qualified immunity, asserting that it was not clearly established that the Eighth amendment applies to malfunctioning cooking equipment.

The qualified immunity analysis consists of two steps: (1) viewing the facts in the light most favorable to the plaintiff, did the defendant violate the plaintiff's rights; and (2) was the right clearly established at the time the defendant acted. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc), *cert. denied*, 137 S.Ct. 831 (Jan. 23, 2017).

First, viewing the facts in the light most favorable to Plaintiff, both Woods and Gonzales knew there was a sign on the kettle that said "do not use;" that Woods told Plaintiff, and Gonzales overheard Woods tell Plaintiff, not to tilt the kettle; that Plaintiff was to use the kettle to cook eggs in boiling hot water; and, that ultimately the kettle tilted, causing the boiling hot water to pour out onto Plaintiff, resulting in second and third degree burns. Under these facts, a reasonable factfinder could conclude that Woods and Gonzales knew of and disregarded a substantial risk to Plaintiff's safety.

Second, the court must consider whether the law was clearly established.

As Defendants point out, in *Osolinski v. Kane*, 92 F.3d 934 (9th Cir. 1996), an inmate brought suit after an oven door fell off its hinges and caused second degree burns on his arm. *Osolinski*, 92 F.3d at 935. The evidence demonstrated that there had been prior repair requests for the oven, but none had been performed before the inmate was injured. *Id*. The inmate sued under the Eighth Amendment, and the defendants argued they were entitled to qualified immunity. *Id*. The Ninth Circuit noted that the Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates, and to establish liability under the

Eighth Amendment an inmate must prove that the risk of harm was objectively sufficiently serious and that the defendant acted with deliberate indifference. *Id*. at 937. The court then considered "whether it was clearly established in 1992 that a prison official who failed to repair a malfunctioning oven door created a sufficiently serious deprivation of a human need to violate the Eighth Amendment." *Id*. This claim "put at issue [the inmate's] need for personal safety," and the Ninth Circuit noted that it had held in *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985) that "'the Eighth Amendment entitles inmates in a penal institution to an adequate level of safety.'" *Id*. at 938 (quoting *Hoptowit*, 753 F.2d at 784). *Hoptowit* concluded that "serious safety harzards found in occupational areas exacerbated by the inadequate lighting, which seriously threatened the safety and security of inmates" supported a violation of the Eighth Amendment. *Id*. The Ninth Circuit held in *Osolinski*, however, that there were no cases that "clearly established that a single defective device, without any other conditions contributing to the threat to an inmate's safety, created an objectively insufficiently humane condition violative of the Eighth Amendment." *Id*.

In *Osolinski*, the court discussed *Arnold v. South Carolina Dep't of Corrections*, 843 F.Supp. 110 (D.S.C. 1994), where "the court sought to determine whether injury caused by a deliberately indifferent failure to maintain a steam pot [in 1992] violated a clearly established Eighth Amendment right." *Id*. at 938. *Arnold* found no other cases where malfunctioning kitchen equipment caused an injury was found to violate the Eighth Amendment, and therefore, was not clearly established for purposes of qualified immunity. *Id*. (citing *Arnold*, 843 F.Supp. at 114).

*Osolinski* also discussed a case relied on by the appellee, *Gill v. Mooney*, 824 F.2d 192 (2d Cir. 1987), where the inmate alleged a prison official ordered him to continue working on a defective ladder that the official knew was unsafe. *Id*. The Second Circuit held the inmate stated

a claim under the Eighth Amendment. *Id*. The Ninth Circuit said that in *Gill*, "the unsafe nature of the ladder posed an immediate threat to the inmate because the prison official ordered the inmate to use the ladder" which "exacerbated the inherent dangerousness of the defective ladder, rendering the ladder a serious safety hazard, akin to those found in *Hoptowit*." *Id*. at 939.

Here, there is evidence that Woods and Gonzales knew there was a defect with the kettle, that it may have had something to do with the tilting mechanism, and Woods instructed (and Gonzales overheard this) Plaintiff to use the kettle with boiling water to cook eggs anyway. This is more akin *Gill* than to *Arnold*; therefore, it would have been clearly established by *Osolinski* that when a prison official is aware of a defect posing a risk of harm, and nevertheless instructs the inmate to use it, the prison official violates the Eighth Amendment.

In any event, Defendants acknowledge that the Ninth Circuit in *Morgan v. Morgensen*, 465 F.3d 1041 (9th Cir. 2006), *overruled on other grounds* in *Pearson v. Callahan,* 555 U.S. 223 (2009), affirmed the denial of a motion for summary judgment regarding an Eighth Amendment claim where the inmate was injured by a defective printing press while working at his prison job.

In *Morgan,* the inmate alleged that he had told his supervisor about the problem, but the supervisor forced him to keep working anyway. *Morgan*, 465 F.3d at 1043. The defendant asserted that he was entitled to qualified immunity, and the district court agreed. The defendant appealed, and the Ninth Circuit held that "under certain circumstances, dangerous prison working conditions can give rise to an Eighth Amendment claim[.]" *Id*. In addition, the court held that "a prison official is not entitled to qualified immunity when he orders a prisoner to continue operating prison work equipment that the official has been warned and has reason to believe is unnecessarily dangerous." *Id*.

The Ninth Circuit discussed *Osolinskii*, and determined (as the court has determined here) that *Morgan* was more like *Gill*: "Morgan, like Gill, alerted his supervisor to a dangerous defect in the equipment he was using as a part of his prison employment. Canady, like Gill's supervisor, ordered the prisoner to continue working with the defective equipment. Both prisoners were injured as a result of these orders." *Id*. at 1047.

Under *Morgan,* in 2006, it was clearly established that if a prison official is warned that a piece of prison work equipment may be unnecessarily dangerous and orders the prison to continue using it anyway, he or she violates the Eighth Amendment.

Here, taking the facts in the light most favorable to Plaintiff, he warned Woods and Gonzales that there was a note on the kettle that said "do not use" and that it had something to do with the spindle; that Woods appreciated that the defect had something to do with the tilting mechanism as he told Plaintiff not to tilt the kettle, but instructed Plaintiff to use the pot to cook eggs in boiling water anyway. Gonzales was privy to these conversations, and let Plaintiff continue to use the kettle. It was clearly established under both *Osolinski* (via the discussion of *Gill*) and *Morgan* that this conduct may violate the Eighth Amendment.

Defendants attempt to distinguish *Morgan,* arguing that the printing press was clearly defective and tore off the plaintiff's thumb after he had warned his supervisor of that exact problem when the press had almost taken off his fingers and he was told to use it anyway. Defendants assert that this case is different, arguing that the exact danger of the kitchen equipment was not obvious.

The court is not persuaded by this argument. There is evidence that Woods and Gonzales did appreciate the specific danger posed by the kettle, as Woods told Plaintiff not to tip the kettle, and then told Plaintiff. Woods acknowledges that it was ultimately a defect with the tilting

mechanism that resulted in Plaintiff's injury. In *Morgan*, the inmate raised the issue with the printing press with his supervisor, and the supervisor told him to use it anyway, and to "just be very careful." *Id*. at 1044. This is essentially what Plaintiff claims Woods did here.

*Morgan* specifically held that "*Osolinski,* and its extensive embedded discussion of *Hoptowit* and *Gill*, clearly established that a safety hazard in an occupational area, the dangerousness of which is exacerbated when a prison official orders a prisoner to continue working with it after the prisoner raised a concern about whether it was safe to do so, constituted a violation of the prisoner's Eighth Amendment rights." *Id*. at 1048. That is the scenario presented here; therefore, Wood and Gonzales are not entitled to qualified immunity, and summary judgment should be denied as to Woods and Gonzales.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order: **GRANTING** the Motion for Summary Judgment (ECF No. 20) as to defendants Bryant, Davis, and Kirchen; and **DENYING** the motion as to defendants Woods and Gonzales.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 1, 2020

_____
William G. Cobb
United States Magistrate Judge